**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:25-cv-20354**

ZURU INC.,

Plaintiff,

v.

JD E-COMMERCE AMERICA LIMITED, JINGDONG E-COMMERCE (TRADE) HONG KONG CORPORATION, WAL-MART.COM USA, LLC, and WALMART INC.,

Defendants.

---

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff ZURU INC., by and through its undersigned counsel, brings this complaint JD E-COMMERCE AMERICA LIMITED., JINGDONG E-COMMERCE (TRADE) HONG KONG CORP., WAL-MART.COM USA, LLC, and WALMART INC. ("Defendants,") who are promoting, selling, offering for sale and distributing goods bearing or using infringements and confusingly similar imitations of Plaintiff's intellectual property throughout the United States, including within the State of Florida and this district, through Walmart online stores under the merchant names JOYBUY, JOYBUY EXPRESS, and JOYBUY FASHION, JOYBUY SELECTION, and JOYBUY AMERICA, and in support of its claims, alleges as follows:

## SUMMARY OF THE ACTION

1. Plaintiff ZURU INC. ("Zuru" or "Plaintiff") brings this action for federal trademark counterfeiting and infringement, false designation of origin, unfair competition, and

common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law.

2. Plaintiff brings this action for willful copyright infringement and piracy committed for purposes of commercial advantage or private financial gain by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. §501, and for all the remedies available under the 17 U.S.C. § 101, *et seq*.

**SUBJECT MATTER JURISDICTION**

3. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4. This Court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121.

5. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

**PERSONAL JURISDICTION**

6. All defendants are subject to personal jurisdiction in this district because they avail themselves of the laws of the State of Florida, and purposefully direct their activities toward and conduct business with consumers within the state of Florida and this district.

7. WAL-MART.COM USA, LLC and WALMART INC. (collectively "Walmart Defendants") do business in this district through their retail stores throughout the state.

8. The Walmart Defendants own and operate the fully interactive Walmart online website at https://www.walmart.com/ ("Walmart.com"), which is accessible in Florida.

9. Walmart.com is an online store that sells a variety of goods including clothing, groceries, and home accessories.

10. Florida residents can readily access Walmart.com and are able to purchase an endless variety of goods.

11. JD E-COMMERCE AMERICA LIMITED and JINGDONG E-COMMERCE (TRADE) HONG KONG CORPORATION (collectively, "JD Defendants") are merchants who sell goods to consumers on Walmart.com.

12. JD E-COMMERCE AMERICA LIMITED and JINGDONG E-COMMERCE (TRADE) HONG KONG CORPORATION do business on Walmart.com under the merchant names JOYBUY, JOYBUY EXPRESS, JOYBUY FASHION, JOYBUY SELECTION, and JOYBUY AMERICA.

13. Walmart.com allows Florida residents to browse goods available and purchase them for direct shipping to their homes.

14. Walmart.com allows Florida residents to order goods for pickup from stores located in Florida.

15. Florida residents can readily access the JD Defendants' listings on Walmart.com and are able to purchase a variety of goods, including the Counterfeit goods sold by JD Defendants.

16. Florida residents can browse goods offered for sale by JD Defendants that are available by direct ship to homes in Florida, and also for pickup at Walmart stores in Florida.

17. Walmart.com allows Florida residents to contact JD Defendants directly by phone through the number listed under "View Seller Information," or via email through Walmart.com.

18. Walmart Defendants and JD Defendants target their business activities toward consumers throughout the United States, including within this district.

19. Walmart.com promotes sales by JD Defendants on the internet to Florida residents through a variety of methods including search engine optimization (SEO) efforts, follow-up emails to Florida residents who have Walmart.com accounts and who have searched for Joybuy products on Walmart.com, and banner ads promoting Joybuy products that direct customers, including Florida residents, to additional information on those products and sellers, which include the JD Defendants.

20. JD Defendants promote their Walmart.com product listings on the internet, including to Florida residents, through a variety of methods including search engine optimization (SEO) efforts, follow-up emails to Florida residents who have Walmart.com accounts, and who have previously purchased products from JD Defendants, or who have searched for Joybuy products on Walmart.com, and banner ads promoting JD Defendants' products that direct customers, including Florida residents, to additional information on those products

21. Walmart Defendants and JD Defendants secure direct financial benefit from purchases made by Florida residents as well as indirect commercial gain from the web traffic and sales generated by the JD Defendants' activities on Walmart.com.

22. A substantial part of JD Defendants and Walmart.com's revenue derives from their sales to Florida customers.

23. Walmart Defendants and JD Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of Florida cause Plaintiff injury in Florida, and Plaintiff's claims arise out of those activities, pursuant to Fla. Stat. § 48.193.

24. Walmart Defendants and JD Defendants are subject to personal jurisdiction in this district because they act as agents of third-parties or each other in connection with their illegal

activities directed towards the state of Florida that caused Plaintiff injury in Florida, and Plaintiff's claims arise out of those activities, pursuant to Fla. Stat. § 48.193.

25. Walmart Defendants and JD Defendants are subject to personal jurisdiction in this district because they sold Counterfeit goods to purchasers in the state of Florida and in this district causing plaintiff injury in Florida and this district, and Plaintiff's claims arise out of those activities, pursuant to Fla. Stat. § 48.193.

26. Alternatively, JD Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) they are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

27. This Court previously held that the JD Defendants are subject to personal jurisdiction in this district under identical circumstances. See *Royal Enamel Ltd. v. JD E-Commerce Am. Ltd.*, No. 22-CV-23990-DPG, 2024 U.S.P.Q.2D (BNA) 2151, 2024 WL 5074976, 2024 U.S. Dist. LEXIS 224016 (S.D. Fla. Dec. 11, 2024). All theories of personal jurisdiction that the district court in the *Royale Enamel* case found apply here are also alleged by plaintiff in this case.

**VENUE**

28. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(c) because Defendants do business in this judicial district and are subject to the Court's personal jurisdiction.

29. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) since Defendants are, upon information and belief, engaged in infringing activities and causing harm within this

district by advertising, offering to sell, selling and/or shipping infringing products to consumers into this district.

30. Venue is proper in this Court pursuant to 28 U.S.C. §1400(b) because Defendants reside in this district, defendants committed acts of infringement in this district and have regular and established places of business in this district, and Defendants' agents reside or may be found in this judicial district.

## THE PARTIES

31. ZURU INC. ("Zuru") is a corporation incorporated under the law of the British Virgin Islands and a Hong Kong registered company with offices in Kowloon, Hong Kong.

32. Wal-mart.com USA, LLC is a California limited liability company registered to do business in Florida with its headquarters at 850 Cherry Avenue, San Bruno, California, 94066, and can be served by serving its registered agent CT Corporation System.

33. Walmart, Inc. is a Delaware Corporation with its headquarters located at 702 SW 8th Street, Bentonville, Arkansas 72716, and may be served with process through its registered agent, CT Corporation System.

34. JD E-Commerce America Limited, a Delaware limited liability company, is a subsidiary of JD.com, Inc., a Cayman Islands entity and a NASDAQ listed company with a principal place of business in Beijing, China.

35. Jingdong E-Commerce (Trade) Hong Kong Corporation, is a Hong Kong entity and a subsidiary of JD.com, Inc., a Cayman Islands entity and a NASDAQ listed company with a principal place of business in Beijing, China.

36. The JD Defendants are affiliates of or are also identifiable by Walmart.com as Joybuy Express of Irvine, CA; Joybuy of Draper, UT; Joybuy America of Irvine, CA; Joybuy Fashion of Mountain View, CA; and Joybuy Selection of Irvine, CA.

## THE PLAINTIFF

37. Plaintiff ZURU INC. is the U.S. exclusive licensee of all rights in and to the trademarks described below that are the subject of this action from ZURU (Singapore) PTE, Ltd.

38. ZURU is a disruptive and award-winning company that designs, manufactures and markets innovative toys and consumer products. Inspired by kids and imaginative play, ZURU is one of the fastest growing toy companies in the world and is known for their agility, creativity, and new-age manufacturing techniques. ZURU distributes to all major retailers in over 120 countries and has delighted millions of families all over the world with its extensive brand portfolio and partnerships with entertainment properties, including Nickelodeon, Disney, Universal Studios and Dream Works.

39. ZURU's products are sold through Amazon.com, Walmart.com, Target.com, Costco.com, Lowe's.com, its own websites https://zuru.com/ and https://www.bunchoballons.com/, and other authorized retailers.

40. ZURU owns the trademarks and copyrights described below that are the subject of this action.

41. ZURU offers for sale and sells its products within the state of Florida, including this district, and throughout the United States.

42. Like many other intellectual property rights owners, ZURU suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein.

43. ZURU is harmed, the consuming public is duped and confused, and Defendants earn substantial profits in connection with the infringing conduct.

44. In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, ZURU expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

45. The recent explosion of infringement on the Internet has created an environment that requires companies like ZURU to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of ZURU's intellectual property rights, including consumer confusion and the erosion of the brand.

## PLAINTIFF'S INTELLECTUAL PROPERTY RIGHTS

### A. PLAINTIFF'S TRADEMARK RIGHTS

46. ZURU has earned an international reputation for quality, reliability and value, and is credited for many breakthroughs that have occurred in the toy industry.

47. ZURU is an exclusive licensee and official source of BUNCH O BALLONS products in the United States.

48. ZURU manufactures and sells its water balloon toys under the mark BUNCH O BALLONS, BUNCH O BALLOONS are water balloons that can be filled as a bunch in seconds. BUNCH O BALLOONS are sold under several federally registered trademarks including: BUNCH O BALLOONS, BUNCHO, FILL AND TIE UP TO 100 WATER BALLOONS IN 60 SECONDS!, SELF-SEALING WATER BALLOONS, NEON COLOR, CRAZY, NEON SPLASH!, FILL & TIE 100 WATER BALLONS IN 60 SECONDS (collectively the "BoB Marks").

49. Plaintiff is the licensee of all rights in and to the BoB Marks (Standard Characters) shown in the table below, including the exclusive right to pursue acts of infringement worldwide and retain and recover all proceeds thereof.

| **Mark** | **U.S. Reg. No.** | **IC** | **First Use/ First Use in Commerce** | **Registration Date** | **Exhibit** |
|---|---|---|---|---|---|
| BUNCH O BALLOONS | 4,709,630 | 28 | 8/30/2014 | 3/24/2015 | 1A |
| BUNCHO | 6,086,014 | 28 | 8/30/2014 | 6/23/2020 | 1B |
| FILL AND TIE UP TO 100 WATER BALLOONS IN 60 SECONDS! | 4,928,737 | 28 | 1/15/2015 | 3/29/2016 | 1C |
| SELF-SEALING WATER BALLONS | 7,291,127 | 28 | 5/7/2015 | 1/23/24 | 1D |
| NEON COLORS | 7,389,313 | 28 | 10/14/2021 | 5/14/2024 | 1E |
| CRAZY | 7,303,063 | 28 | 9/1/2019 | 2/13/2024 | 1F |
| NEON SPLASH! | 7,389,310 | 28 | 5/14/2024 | 5/12/2021 | 1G |
| FILL & TIE 100 WATER BALLOONS IN 60 SECONDS | 4,928,737 | 28 | 1/15/2015 | 1/10/2023 | 1H |

50. The BoB Marks are valid and registered in International Class 28 for "water balloons" and "toys, namely, collectible toy figures in the nature of plastic character toys and plush toys; toy models; toy figures; molded plastic toy figurines in the nature of toy animal figurines; character toys, namely, fantasy character toys and plastic character toy monsters; toy vehicles; outfits for toys, namely, articles of clothing for toys; collector cases for toys, namely,

cases for action figures; clothes for toys, namely, articles of clothing for toys; glasses for toys, namely, articles of clothing for toys; toy furniture; toy food, namely, modeled plastic toy figurines; toy weapons in the nature of toy guns and toy pistol; Games, namely, board games, card games, and arcade games; Playthings, namely, toy scooters and bean bag toy animals; toys comprising and including fluid fillable containers, namely, balloons; amusements and novelties, namely, paper party favors and fake teeth; play equipment, namely, jungle gyms, and toy action figures and accessories therefor; play sets for action figures", on the Principal Register of the United States Patent and Trademark Office and shown in Composite Exhibit 1.

51. The BUNCH O BALLOONS and FILL AND TIE UP TO 100 WATER BALLOONS IN 60 SECONDS! are incontestable.

52. The BoB Marks are used in connection with the manufacture and distribution of Plaintiff's high-quality and unique water balloons.

53. The BoB Marks have been used in interstate commerce to identify and distinguish Plaintiff's high-quality and unique water balloon products for an extended period of time.

54. Shown below is the BoB Marks as it is used on the website for Plaintiff's products in connection with the sale of ZURU's goods.




55. The BoB Marks have been used by Plaintiff long prior to Defendants' use of copies of those trademarks.

56. The BoB Marks have never been assigned or licensed to any of the Defendants.

57. The BoB Marks are a symbol of Plaintiff's quality goods, reputation and goodwill and have never been abandoned.

58. Plaintiff has carefully monitored and policed the use of the BoB Marks.

59. The BoB Marks are well known and famous (as that term is used in 15 U.S.C. §1125(c)(1)) and have been for many years.

60. Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the BoB Marks and the water balloons bearing or using those Marks.

61. Plaintiff has extensively used, advertised, and promoted the BoB Marks in the United States in association with the sale of high-quality and unique water balloons.

62. Plaintiff has spent substantial resources promoting the BoB Marks and water balloons bearing or using the BoB Marks.

63. In recent years, sales of products bearing the BoB Marks have exceeded a million dollars within the United States.

64. As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the BoB Marks as being high-quality and unique water balloons sponsored and approved by Plaintiff.

65. Accordingly, the BoB Marks have achieved secondary meaning as identifiers of high-quality and unique water balloons.

66. Genuine water balloons bearing or sold under the BoB Marks are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.

67. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing have become increasingly important to Plaintiff's overall marketing and consumer education efforts.

68. Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

69. Plaintiff's SEO strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the BoB Marks.

### B. PLAINTIFF'S COPYRIGHT RIGHTS

70. Plaintiff ZURU advertises, markets, promotes and sells its BoB branded products using photographs of its artwork that is protected by copyright and registered with the U.S. Copyright Office (hereinafter, referred to as the "Copyrighted Works").

71. Plaintiff registered its "Bunch O Balloon water packaging A" with the U.S. Copyright Office on May 7, 2019 and was assigned registration number VA-2-149-747.

72. True and correct copies of Plaintiff's copyright registrations and photographs of the sculptures they apply to are attached hereto as Composite Exhibit 2.

73. Genuine ZURU goods are widely, legitimately advertised and promoted by Plaintiff and its authorized distributors using Plaintiff's Copyrighted Work.

74. Plaintiff has never granted authorization to Defendants to advertise, market, or promote unauthorized goods using Plaintiff's Copyrighted Work.

### <u>WALMART DEFENDANTS</u>

75. The Walmart Defendants describe Walmart.com as "a curated community of respected, professional sellers who offer only top-quality, authentic products and best-in-class customer service."

76. Walmart.com claims to only allow "qualified businesses" to sell their products on Walmart.com, and to have a selection process that analyzes each seller's catalog, operations, and business information to help ensure those sellers provide "high-quality experiences" to Walmart.com.

77. Walmart.com claims to respect the intellectual property rights of others.

78. Walmart.com's "Copyright Claims" policy states that "[c]opyright protected content can be removed and/or disabled if it was utilized or disseminated by Walmart.com without proper permission from the copyright owner."

79. Walmart.com's "Trademark Claims" policy states that "Walmart reserves the right to remove any content that is found to infringe the rights of a trademark owner."

80. Walmart.com's Counterfeit Claims" policy states that where there is a claim of counterfeiting, "Walmart reserves the right to remove any content it believes to be counterfeit and further reserves the right to take any additional measures it deems appropriate in handling a claim of counterfeit goods."

81. Walmart.com's "Repeat Infringer Policy" states that it takes "appropriate action against parties it categorizes as repeat infringers. A repeat infringer includes, but is not limited to, anyone who qualifies as such under the DMCA or who receives multiple claims of IP infringement and such claims are determined by Walmart to be valid. Action may include, but is not limited to, removal of listings and suspension or termination of any relationship with Walmart."

82. Paragraph 2(e) of Walmart.com's Marketplace Program Terms and Conditions requires sellers sell only products that are "authentic, authorized for sale, and not stolen, counterfeit, illegal or misbranded," and that do not "infringe[] any third-party "Intellectual Property Rights." Paragraph 2(f) states that once Walmart.com has removed a retailer product in response to a notice of violation of intellectual property, the seller must ensure that the removed "Products and related Retailer Product Content no longer appear on the Walmart.com Sites."

83. Walmart.com engages in unfair competition with Plaintiff by allowing sellers such as the JD Defendants to continually advertise, offer for sale, and sell goods bearing or using

infringements of Plaintiff's intellectual property rights to consumers within the United States and this district through Walmart.com using the Seller IDs, competing with Plaintiff's economic interests and causing Plaintiff harm and damage within this jurisdiction.

84. Walmart.com, by facilitating the JD Defendants' ability to sell and offer to sell products that infringe Plaintiff's intellectual property rights, is contributorily infringing Plaintiff's intellectual property rights.

85. Walmart.com facilitates the illegal actions of the JD Defendants, resulting in the natural and intended byproduct of these actions, the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights and the destruction of the legitimate market sector in which it operates.

86. Upon information and belief, at all times relevant hereto, Walmart.com had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

**JD DEFENDANTS**

87. JD Defendants have registered, established, or purchased, and maintained and operated seller ID accounts at Walmart called JOYBUY, JOYBUY EXPRESS, and JOYBUY FASHION, JOYBUY SELECTION, and JOYBUY AMERICA.

88. JD Defendants use their seller ID accounts at Walmart.com to target their business activities toward consumers throughout the United States, including within this district, under the merchant name JOYBUY.

89. JD Defendants are the past and present controlling forces behind the sale of products bearing or using infringements of Plaintiff's intellectual property rights as described under the merchant name JOYBUY.

90. JD Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods bearing or using infringements of Plaintiff's intellectual property rights to consumers within the United States and this district through Walmart.com using the Seller IDs with the merchant name JOYBUY.

91. The JD Defendants use product denominations, descriptive content, and images in their individual seller stores at Walmart.com containing Plaintiff's intellectual property, and these denominations and content are indexed on search engines and compete directly with Plaintiff for space in search results.

92. The appearance of the JD Defendants' individual seller stores at Walmart.com in search engine results undermines Plaintiff's efforts to educate consumers about the value of products sold under the Plaintiff's intellectual property.

93. The JD Defendants are using infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their individual seller stores at Walmart.com operating under the Seller IDs with the merchant name JOYBUY, thereby increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

94. JD Defendants, through the sale and offer to sell infringing products, are directly, and unfairly, competing with Plaintiff's economic interests throughout the United States, including in the state of Florida, and causing Plaintiff harm and damage within this jurisdiction.

95. The natural and intended byproduct of JD Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiffs' intellectual property rights and the destruction of the legitimate market sector in which it operates.

96. Upon information and belief, at all times relevant hereto, JD Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

**DEFENDANTS' INFRINGING ACTIVITIES**

97. Plaintiff's business success in crafting and selling high-quality, unique water balloons has resulted in infringement of the Trademark and Copyrighted Work by Defendants.

98. Defendants are promoting, advertising, manufacturing, distributing, selling, and/or offering products for sale in interstate commerce cheap knockoffs of Plaintiff's high-quality and very unique products that are counterfeits and infringements of Plaintiff's intellectual property rights (the "Counterfeit goods") through Walmart.com operating under the Seller IDs with the merchant name JOYBUY.

**ZURU ORIGINAL**



**JOYBUY COUNTERFEIT**



99. The JD Defendants are using pirated copies of the Copyrighted Work or substantially similar pictures, and similar or identical marks to one or more of the BoB Marks in their infringing activities. True and correct copies of the web pages captured and downloaded showing the infringing products at Walmart.com are attached hereto as Composite Exhibit 3.

100. As a consequence of the described use of pirated copies of the Copyrighted Work by Defendants, the BoB Marks are also being used on Defendants' infringing products sold on Walmart.com, which results in the false designation of origin of the products, and misleads consumers about the source and quality of the products and/or a possible association between Plaintiff and the Defendants.

101. The JD Defendants are using pirated copies of the Copyrighted Work together with denominations and descriptive language similar to that used by Plaintiff in promoting its high-quality and unique products through its legitimate sales channels, and in some cases Defendants are using similar or identical marks to one or more of BoB Marks, to initially attract online customers and drive them to Defendants' individual seller stores at Walmart.com operating under the Seller IDs with the merchant name JOYBUY.

102. As a consequence of the described use of pirated copies of the Copyright Work by Defendants, the BoB Marks are also being used on Defendants' infringing products sold on Walmart.com, which results in the false designation of origin of the products, and misleads consumers about the source and quality of the products and/or a possible association between Plaintiff and the Defendants.

103. Defendants are operating on Walmart.com using pirated copies of the Copyrighted Work together with denominations and descriptive language similar to that used by Plaintiff in promoting its high-quality, unique water balloons through its legitimate sales

channels, and in some cases the Defendants are using similar or identical marks to the BoB Marks, to initially attract online customers and drive them to the Defendants' goods at Walmart.com.

104. Plaintiff has used the BoB Marks and the Copyrighted Work extensively and continuously before the Defendants began offering infringing and confusingly similar imitations of Plaintiff's merchandise.

105. Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit goods with the knowledge and intent that such goods will be mistaken for the high-quality, unique water balloons offered for sale by Plaintiff, despite Defendants' knowledge that it is without authority to use the BoB Marks and the Copyrighted Work.

106. The net effect of Defendants' actions is consumer confusion at the time of initial interest, sale, and in the post-sale setting. Consumers are likely to believe all of Defendants' goods offered for sale on Defendants' individual seller stores at Walmart.com are high-quality and unique water balloons originating from, associated with, and approved by Plaintiff.

107. Defendants advertise their e-commerce stores, including their Counterfeit goods offered for sale, to the consuming public via individual seller stores at Walmart.com operating under the Seller IDs with the merchant name JOYBUY.

108. In so advertising their stores and products, Defendants improperly and unlawfully use infringing versions of the Copyrighted Work, and in some cases use similar or identical marks to one or more of the BoB Marks, without Plaintiff's permission.

109. As part of their overall infringement and pirating scheme, Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar

advertising and marketing strategies based in large measure upon an illegal use of one or more the Copyrighted Work and the BoB Marks. The web pages captured and downloaded with Defendant's infringing products at Walmart.com display the same advertising images of Plaintiff's genuine products.

110. Specifically, Defendants are using pirated versions of the Copyrighted Work, and counterfeits and infringements of the BoB Marks, in order to make their individual seller stores at Walmart.com selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiff's goods and goods sold by Plaintiff's competitors online.

111. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace on Plaintiff's website for Plaintiff's genuine water balloons featuring the Copyrighted Work and sold under the BoB Marks.

112. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's intellectual property, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

113. Defendants are concurrently conducting and targeting their infringing and pirating activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

114. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

115. Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's exclusive rights of Plaintiff's intellectual property, including its exclusive right to use such intellectual property and the goodwill associated therewith.

116. Defendants' use of Plaintiff's intellectual property, including the promotion and advertisement, reproduction, distribution, public display, promotion, advertisement, sale and offering for sale of their Counterfeit goods, is without Plaintiff's consent or authorization.

117. Defendants engage in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.

118. If Defendants' intentional infringing and pirating activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

119. Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

120. Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods featured in the Copyrighted Work and sold under the BoB Marks and Defendants' inferior Counterfeit goods, which there is not.

121. Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' infringing, pirating and their unfairly competitive activities connected with the merchant name JOYBUY at Walmart.com.

122. Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and their wrongful use of Plaintiff's intellectual property rights.

123. If Defendants' infringing, pirating and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

124. The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, distribution, public display, use, advertisement, promotion, offers to sell, and sale of their Counterfeit goods, with pirated versions of Plaintiff's Copyrighted Works or substantially similar pictures, and in some cases with similar or identical marks to one or more of BoB Marks.

125. Defendants have sold their infringing products in competition directly with Plaintiff's genuine products.

126. Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Plaintiff's Copyrighted Work and the BoB Marks.

127. Plaintiff has no adequate remedy at law.

## COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114) AGAINST ALL DEFENDANTS

128. Plaintiff incorporates the allegations of paragraphs 1 through 127 of this Complaint as if fully set forth herein.

129. This is an action for trademark infringement against Defendants based on their use of confusingly similar imitations of the BoB Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit goods.

130. Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using infringements of the BoB Marks.

131. Defendants are continuously infringing and inducing others to infringe the BoB Marks by using it to advertise, promote, sell, and offer to sell Counterfeit goods.

132. Defendants' concurrent infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit goods.

133. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

134. Defendants' above-described illegal actions constitute infringement of the BoB Marks in violation of Plaintiff's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

135. Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

136. If not preliminarily and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

**COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. §1125(a)) AGAINST ALL DEFENDANTS**

137. Plaintiff incorporates the allegations of paragraphs 1 through 127 of this Complaint as if fully set forth herein.

138. Upon information and belief, Defendants have widely advertised, offered for sale, sold, and shipped throughout the United States via Walmart.com their Counterfeit goods bearing or infringing the BoB Marks.

139. Defendants' Counterfeit goods bearing, offered for sale, and sold using copies of the BoB Marks are virtually identical in appearance to Plaintiff's genuine goods.

140. Defendants' Counterfeit goods are different in quality from Plaintiff's genuine goods and are of much lower quality.

141. Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit goods.

142. Defendants, upon information and belief, in connection with their advertisement, offer for sale, and sale of their Counterfeit goods, have used false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

143. Defendants have authorized infringing uses of the BoB Marks in Defendants' advertisement and promotion of their infringing branded goods.

144. Defendants have misrepresented to members of the consuming public that the Counterfeit goods being advertised and sold by them are genuine, non-Counterfeit goods.

145. Defendants are using infringements of the BoB Marks in order to unfairly compete with Plaintiff and others for space within organic search engine results and social media results, thereby jointly depriving Plaintiff of a valuable marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the Internet and across social media platforms.

146. Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

147. Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

148. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

**COUNT III – COMMON LAW UNFAIR COMPETITION AGAINST ALL DEFENDANTS**

149. Plaintiff incorporates the allegations of paragraphs 1 through 127of this Complaint as if fully set forth herein.

150. This is an action against Defendants based on their promotion, advertisement, distribution, sale and/or offering for sale of goods bearing or using marks that are virtually identical to one or more of the BoB Marks in violation of Florida's common law of unfair competition.

151. Defendants' activities complained of herein constitute unfair methods of competition.

152. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods using or bearing infringements of the BoB Marks.

153. Defendants are also using infringements of the BoB Marks to unfairly compete with Plaintiff and others for (1) space in search engine and social media results across an array of search terms and (2) visibility on the Internet.

154. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' individual seller stores at Walmart.com and all products sold therein by their use of the BoB Marks.

155. Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

**COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT AGAINST ALL DEFENDANTS**

156. Plaintiff incorporates the allegations of paragraphs 1 through 127 of this Complaint as if fully set forth herein.

157. This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit goods bearing the BoB Marks.

158. Plaintiff is the owner of all common law rights in and to the BoB Marks.

159. Defendants, upon information and belief, are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing or using infringements of the BoB Marks.

160. Defendants' infringing activities are likely to cause, and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit goods bearing or using the BoB Marks.

161. Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

**COUNT V – COPYRIGHT INFRINGEMENT AGAINST ALL DEFENDANTS**

162. Plaintiff incorporates the allegations of paragraphs 1 through 127 of this Complaint as if fully set forth herein.

163. Plaintiff's water balloon packaging is protected by copyright and registered with the Copyright Office. Plaintiff duly registered its 2-D artwork "Bunch O Balloons Water

Packaging A" under the registration number VA-2-149-747 with the registration date of May 7, 2019. Defendants directly infringed Plaintiff's exclusive rights in its Copyrighted Work under 17 U.S.C. §106.

164. Defendants copied, reproduced, displayed, and distributed Plaintiff's Copyrighted Work and/or prepared derivative works based upon Plaintiff's Copyrighted Work in violation of Plaintiff's exclusive rights under 17 U.S.C. §106(1), (2), (3) and/or (5).+

165. Defendants' conduct constitutes direct copyright infringement of Plaintiff's Copyrighted Work.

166. Defendants profited from the direct infringement of the exclusive rights of Plaintiff in the Copyrighted Work at issue in this case under the Copyright Act.

167. Defendants' infringement is not limited to the copyright infringement listed above. Plaintiff will identify such additional infringement after discovery.

168. On information and belief, there is an ongoing and continuous business practice of infringement by Defendants.

169. On information and belief, Defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

170. Plaintiff has been damaged by the infringement.

171. The harm to Plaintiff is irreparable.

172. Plaintiff is entitled to temporary and permanent injunctive relief from Defendants' willful infringement.

173. Plaintiff is entitled to recover its actual damages and profits of Defendants that are attributable to their infringing and pirating activities.

174. Plaintiff is entitled to recover its reasonable costs and attorneys' fees incurred in this action.

## COUNT VI
## AGAINST WAL-MART.COM USA, LLC, AND WALMART, INC.
## CONTRIBUTORY TRADEMARK INFRINGEMENT

175. Plaintiff incorporates the allegations of paragraphs 1 through 127 and 129 through 136 of this Complaint as if fully set forth herein.

176. Plaintiff has identified listings on Walmart.com that infringe Plaintiff's intellectual property.

177. Walmart has failed to prevent infringement of Plaintiff's intellectual property.

178. Walmart has allowed repeat infringers to maintain infringing listings and relist infringing products after having been put on notice.

179. Walmart failed to take reasonable steps to prevent continued infringement.

180. Walmart failed to take reasonable steps to identify and remove the listings that unlawfully used Plaintiff's trademarks and pirated copies of Plaintiff's intellectual property.

181. Walmart knew about the infringement and allowed the infringement to continue.

182. Walmart's actions and inaction contributed to the infringement of Plaintiff's trademark.

183. Walmart's conduct constitutes contributory trademark infringement of Plaintiff's BoB Marks.

184. Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Walmart's actions.

**COUNT VII**
**AGAINST WAL-MART.COM USA, LLC, AND WALMART INC**
**CONTRIBUTORY COPYRIGHT INFRINGEMENT**

185. Plaintiff incorporates the allegations of paragraphs 1 through 124 and 163 through 174 of this Complaint as if fully set forth herein.

186. Pursuant to 17 U.S.C. § 411, Plaintiff's Copyrighted Work is protected by copyright.

187. Through its conduct, Walmart materially contributed to the infringement of Plaintiff's copyrights.

188. By facilitating and enabling the listing and relisting products for sale that infringed Plaintiff's copyrights, Walmart contributed to the infringement.

189. Walmart failed to take reasonable steps to prevent the infringement of Plaintiff's copyrights.

190. Walmart failed to take reasonable steps to identify and remove listings that unlawfully used Plaintiff's copyrights.

191. Walmart knew or should have known of the infringement of Plaintiff's copyrights and allowed the infringement to continue.

192. Walmart's actions and inaction contributed to the infringement of Plaintiff's copyrights.

193. Walmart's conduct constitutes contributory copyright infringement of Plaintiff's Copyrighted Work.

194. Plaintiff has been damaged by the infringement.

195. The harm to Plaintiff is irreparable.

196. Plaintiff is entitled to temporary and permanent injunctive relief.

197. Plaintiff is entitled to recover actual damages and/or statutory damages, at its election, which are attributable to Walmart's contributory infringement.

198. Plaintiff is entitled to recover its reasonable costs and attorneys' fees incurred in this action.

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a. Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. §1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit goods; from infringing or diluting the BoB Marks; from using the BoB Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, infringement, copy, or

colorable imitation of the BoB Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks and from otherwise unfairly competing with Plaintiff; from copying, displaying, distributing or creating derivative works of Plaintiff's Copyrighted Work.

b. Entry of an order authorizing seizure, impoundment and/or destruction of all of the products used to perpetrate the infringing acts pursuant to 17 U.S.C. §503.

c. Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C.§ 1125(a), comprising false designation of origin, common law unfair competition, and common law trademark infringement activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C. §1117(a).

d. Entry of an Order requiring Defendants to account to and pay Plaintiff for actual damages and all profits resulting from Defendants' copyright

infringement, for all infringements involved in the action, with respect to any one work, for which Defendants are liable as the Court considers just pursuant to 17 U.S.C. §504(a)(1) and (b), or to the extent the Court finds that infringement was committed willfully, an award of statutory damages to a sum of not more than $150,000 per violation, pursuant to 17 U.S.C. §504(c)(2).

e. Entry of an award pursuant to 15 U.S.C. §1117(a) and 17 U.S.C. §505 of Plaintiff's costs and reasonable attorneys' fees and investigative fees associated with bringing this action, including the cost of corrective advertising.

f. Entry of an award of pre-judgment interest on the judgment amount.

g. Entry of an Order for any further relief as the Court may deem just and proper.

DATED: January 23, 2025

Respectfully submitted,

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar Number: 98220
Joel.rothman@sriplaw.com
ANGELA M. NIEVES
Florida Bar Number: 1032760
Angela.nieves@sriplaw.com
RACHEL I. KAMINETZKY
Florida Bar Number: 1059614
rachel.kaminetzky@sriplaw.com

**SRIPLAW, P. A.**
21301 Powerline Road
Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff ZURU Inc.*